# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KRISTINA MCCLURE**
**As Administrator of the Estate of**
**COLTON M. MCCLURE, Deceased**
c/o Fieger, Fieger, Kenney & Harrington, P.C.
19390 West Ten Mile Road
Southfield, MI 48075                                        Case No.

       Plaintiff,
                                     Judge

vs.

**TRUMBULL COUNTY,**
c/o Trumbull County Prosecutor's Office
Trumbull County Administration Building                 COMPLAINT AND
4th Floor                                                         JURY DEMAND
160 High Street, NW
Warren, OH 44481

And

**SHERIFF PAUL S. MONROE**
150 High Street NW
Warren, OH 44481

And

**MAJOR DANIEL MASON,**
Individually and in his official capacity,
150 High Street
Warren, OH 44481

And

**OFFICER GARY MUSOLINO,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER RYAN FIFE,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And


**OFFICER JOSE MCCORD,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER DAN ZAKRAJSEK,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER WILLIAM DREIER,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER KENNEY,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER ROBERT DILLON,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**SGT BARBARA CARDUCCI,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER JOHN DOE ONE,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481
And

**OFFICER JOHN DOE TWO,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER ZACHARY FERGUSON,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER MEGAN FRAME,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER SEAN MASKALUK,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER ELIJAH BRICKER,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**OFFICER RANDI MCELHINNY,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**DR. PHILLIP MALVASI, D.O., LLC,**
1017 Youngstown Warren Road
Niles, OH 44446

And

**PHILLIP MALVASI, D.O.,**
Individually and in his official capacity
1017 Youngstown Warren Road
Niles, OH 44446

And

**JENNIFER BACH,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**MA THOMAS,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**MA TAYLOR SIMMONS,**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

And

**CARLA AHART, LPN**
c/o Trumbull County Jail
150 High Street
Warren, OH 44481

      Defendants.

## PRELIMINARY STATEMENT

The civil rights, medical malpractice and wrongful death claims are asserted herein as a result of Colton McClure's constitutional rights being violated and his unnecessary and painful and preventable death on August 9, 2022.  Pre-trial detainee, Colton McClure, 31, who, while under the care, custody, and control of Trumbull County, was subjected to excessive force; and, repeatedly denied the opportunity to be assessed, evaluated, or treated by qualified medical practitioners, despite his excruciating pain and obvious physical symptoms of a medical emergency.

## JURISDICTION AND VENUE

1.      That this Court has jurisdiction of this action under the provisions of Title 28 of the United States Code, Sections 1331, 1343, and 42 USC §1983 and also has supplemental jurisdiction over all state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims, pursuant to 28 U.S.C. § 1367.

2.      This is a civil action brought pursuant to the Civil Rights Act, 42 U.S.C. §1981, *et seq*., seeking monetary and punitive damages against Defendants under 42 U.S.C. §1983, and costs and attorney fees under 42 U.S.C. §1988, for violations of Plaintiff's rights under the Fourth and/or Fourteenth Amendments of the United States Constitution.

3.      That each and every act of Defendants, as set forth herein, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws and customs,

and by virtue of, and under the authority of the color of law and such actions were performed in the course and scope of employment of each individual Defendant.

4.    That the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees.

## PARTIES

5.    Plaintiff, KRISTINA MCCLURE, is the duly appointed Administrator for the Estate of COLTON M. MCCLURE.  Kristina McClure was appointed as the Administrator of the Estate of Colton M. McClure on May 9, 2023, by the Probate Court of Portage County, Ohio in Case No. 2023ES00002.

6.    Defendant, TRUMBULL COUNTY, was a municipal corporation, duly organized in carrying on governmental functions in the County of Trumbull, State of Ohio, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Trumbull County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

7.    Defendant, SHERIFF PAUL S. MONROE (hereinafter SHERIFF MONROE), is an employee and/or agent of Trumbull County, who was at all times relevant to this case the duly elected Sheriff for Trumbull County, responsible for controlling and overseeing the Jail of Trumbull County, its deputies and jail staff, as well as the hiring of medical personnel to provide care to inmates, and is being is being sued in his official capacity and individual capacity.

8.    Defendant, MAJOR DANIEL MASON (hereinafter MAJOR MASON), is an employee and/or agent of Trumbull County, who was at all times relevant to this case the Jail Administrator for Trumbull County Jail, responsible for controlling and overseeing the Jail of

Trumbull County as well as its deputies and jail staff and is being is being sued in his official capacity and individual capacity.

9.     Defendant, OFFICER GARY MUSOLINO (hereinafter MUSOLINO), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

10.     Defendant, OFFICER RYAN FIFE (hereinafter FIFE), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

11.     Defendant, OFFICER JOSE MCCORD (hereinafter MCCORD), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

12.     Defendant, OFFICER DAN ZAKRAJSEK (hereinafter ZAKRAJSEK), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

13.     Defendant, OFFICER WILLIAM DREIER (hereinafter DREIER), was a corrections officer employed by Trumbull County, acting under the color of state law within the

course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

14.      Defendant, OFFICER KENNEY (first name currently unknown) (hereinafter KENNEY), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

15.      Defendant, OFFICER ROBERT DILLON, (hereinafter DILLON), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

16.      Defendant, SGT BARBARA CARDUCCI, (hereinafter SGT CARDUCCI), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in her individual capacity.

17.      Defendant, OFFICER ZACHARY FERGUSON, (hereinafter FERGUSON), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

18.     Defendant, OFFICER MEGAN FRAME, (hereinafter FRAME), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in her individual capacity.

19.     Defendant, OFFICER SEAN MASKALUK, (hereinafter MASKALUK), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

20.     Defendant, OFFICER ELIJAH BRICKER, (hereinafter BRICKER), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

21.     Defendant, OFFICER RANDI MCELHINNY, (hereinafter MCELHINNY), was a corrections officer employed by Trumbull County, acting under the color of state law within the course and scope of his employment with Trumbull County and was acting under the color and pretense of ordinances, regulations, laws and customs of Trumbull County, and is being sued in his individual capacity.

22.     Defendants OFFICER GARY MUSOLINO, OFFICER  RYAN  FIFE,  OFFICER JOSE MCCORD, OFFICER DAN ZAKRAJSEK, OFFICER WILLIAM DREIER, OFFICER KENNEY, OFFICER ROBERT DILLON, SGT BARBARA CARDUCCI, OFFICER ZACHARY

FERGUSON, OFFICER MEGAN FRAME, OFFICER SEAN MASKALUK, OFFICER ELIJAH BRICKER and OFFICER RANDI MCELHINNY, hereinafter are collectively referred to as "CORRECTIONS OFFICERS".

23.     Defendant, DR. PHILLIP MALVASI, D.O., LLC, (hereinafter MALVASI, LLC) is an Ohio corporation doing business in Trumbull County, Ohio. At all times relevant to this case, Malvasi LLC, contracted with Defendant Trumbull County and/or Phillip Malvasi, D.O. to provide and/or provided medical care to people in custody in the Trumbull County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

24.     Defendant, PHILLIP MALVASI, D.O., (hereinafter DR. MALVASI), is, on information and belief, the principal and/or employee and/or agent of Malvasi LLC, and at all times relevant to this case, contracted with Defendant TRUMBULL COUNTY to provide and/or provided medical care to people in custody in the Trumbull County Jail. Dr. Malvasi is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is being sued in his individual and official capacities.

25.     Defendants, JENNIFER BACH, MA THOMAS, MA TAYLOR SIMMONS and CARLA AHART, LPN (collectively, "DEFENDANT MEDICAL STAFF") are employees and/or agents of Malvasi LLC and/or Dr. Malvasi and/or Trumbull County. Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

## FACTUAL ALLEGATIONS

26.     On August 6, 2022, at approximately 4:00 PM, the assistant manager at Romeo's Pizza, Jason Haymaker, called 911 for a medical team to assess his employee, Colton McClure. McClure had arrived at work over four hours late and appeared unable to keep his balance and was slurring his words.

27.     Mr. Haymaker had made multiple phone calls to McClure prior to his arrival, each time McClure sounded confused and was unable to recall their previous conversation.

28.     When McClure arrived at work, he smelled of marijuana and his eyes appeared dilated.  McClure, who was normally an efficient employee, on this date was grabbing the wrong food and spilling food on the ground as orders came in.  His hands were shaking so bad, when he sauced a pizza, sauce would fly onto the ground and walls.  McClure appeared to his coworkers to "be out of his mind," making statements that did not make sense, thus 911 was called for his safety.

29.     The Streetsboro police arrived at Romeo's Pizza and advised that McClure had a warrant out of Trumbull County.  McClure was arrested and handed over to Trumbull County at approximately 4:35 PM on August 6, 2022.

30.     That when Defendant, MUSOLINO, received McClure from the transport deputy, Deputy John Dina, at approximately 5:00 PM, Deputy Dina informed MUSOLINO that McClure appeared *highly intoxicated*.

31.     McClure was strip searched and narcotic paraphernalia and marijuana was found on his person prior to booking.

32.     That McClure was booked at or around 5:08 PM on August 6, 2022, by Defendant MUSOLINO.  McClure's height and weight were recorded as 5'6," 100 lbs. with small build.

33.     At the time he was booked, it was clear and obvious that McClure was suffering from a serious medical condition requiring immediate and emergent medical treatment.

34.     The serious medical condition was so obvious that even a lay person would easily recognize the necessity that Colton McClure be transferred immediately to a hospital for medical treatment.  McClure's emergent medical need had in fact been identified by the manager at Romeo's Pizza earlier that day and resulted in a 911 call.

35.     That at all times relevant, the Trumbull County Jail Policies and Procedures defined a *Medical Emergency* as any medical problem requiring immediate attention for an inmate, which if not provided could become critical, permanent or life threatening.

36.     That during the booking intake process, Colton McClure, was visibly in the active throes of a readily apparent medical emergency, as defined by Trumbull County Jail Policies and Procedures, demonstrated by his cognitive, physical, emotional, psychological, behavioral, gastrointestinal and mood symptoms in conjunction with his known tendency to abuse illicit drugs.

37.     The booking intake process included the completion of a Trumbull County Medical Pre-Screen Intake form which specifically inquired into the inmate's use and/or withdrawal from drugs.

38.     At all times relevant hereto, the Trumbull County Medical Pre-Screen Intake form with regard to Colton McClure, indicated that McClure had multiple sclerosis and that he used illicit drugs of unknown amounts.  The form further indicated McClure's placement on "C-58/ISO" (believed to be suicide watch).

39.     At all times relevant hereto, the Trumbull County Adult Justice Center Medical Pre-Screening Form regarding McClure, indicated that McClure was complaining of a medical condition and that he admitted to taking drugs that were not prescribed to him.  According to this form, McClure appeared under the influence of drugs.  The form further indicated that McClure was on medication but that he did not have any medication on his person.

40.     At all relevant times hereto, MUSOLINO was the officer performing the pre-screen intake process for McClure.

41.     At all relevant times hereto, the Booking Assessment Form- Trumbull County Jail- Medical Department, dated August 6, 2022, regarding McClure, indicated that he was currently prescribed *Sublocade* 45-day injections.

42.     *Sublocade* (buprenorphine extended-release), like Methadone, is an opioid prescribed to prevent withdrawal symptoms or cravings associated with opioid withdrawal by interacting with opioid receptors in the brain.

43.     *Sublocade* injections release sustained levels of buprenorphine all month. It can only be injected by a certified healthcare provider. Taking other opioid medicines, or other central nervous system depressants (including street drugs) while on Sublocade can cause severe drowsiness, decreased awareness, breathing problems, coma and death.

44.     At all relevant times hereto, the Booking Assessment Form- Trumbull County Jail- Medical Department, dated August 6, 2022, regarding McClure, indicated that he last used *Heroin* on that same day, August 6, 2022.

45.     That Defendant, JENNIFER BACH, signed the Booking Assessment Form- Trumbull County Jail- Medical Department, dated August 6, 2022, regarding McClure, which further indicated the reason for seeing the inmate as "black eyes."

46.     That Defendant, MUSOLINO, was notified of Booking Assessment Form- Trumbull County Jail- Medical Department, dated August 6, 2022, regarding McClure.  By this time, MUSOLINO had observed and become aware of Colton McClure's continuing medical emergency demonstrated by readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms in conjunction with his known history of opioid abuse, the knowledge that he was prescribed Sublocade injections and the fact that he used Heroin on that same day.

47.     Defendant MUSOLINO did in fact recognize these symptoms and failed to provide prompt and appropriate medical attention for McClure's readily apparent medical emergency.

48.     At all relevant times hereto, Defendant BACH had previously authored a Booking Assessment Form- Trumbull County Jail- Medical Department form for Colton McClure on April 14, 2022.  The reason for seeing McClure on that date was indicated as, "MS."  The report indicated that he was released from "New Day" detox.

49.     That Defendant, JENNIFER BACH, conducted the medical pre-screening intake for McClure at approximately 5:10 PM on August 6, 2022.  During this time, Defendant BACH observed McClure, interacted with McClure and undoubtedly saw and recognized that he was ill. Specifically, BACH knew McClure was within the throes of a readily apparent medical emergency as demonstrated during the medical intake by his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms in conjunction with his known history of opioid abuse, the knowledge that he was prescribed Sublocade injections and McClure's admission to her of using Heroin on that same day.  McClure presented with symptoms indicating life-threatening intoxication that any lay person would have recognized.

50.     Defendant BACH did in fact recognize these symptoms and chose to clear him for booking, failing to provide prompt and appropriate medical attention for his readily apparent medical emergency.

51.     This failure to arrange for medical treatment to be sent to a hospital was so grossly incompetent and inadequate or otherwise excessive to shock the consciousness.

52.     Defendant BACH was aware of the risks of not getting treatment for someone in Colton McClure's sick condition and disregarding his condition was tantamount to an intent to punish.

53.     Defendant BACH ignored the medical requests made by Colton McClure and was deliberately indifferent to his serious medical condition.

54.     At all times relevant hereto, a Trumbull County Justice Center- Sheriff's Office (Jail Division) Officer Observations form, dated August 6, 2022 at 5:08 PM, indicated that McClure exhibited unusual/suspicious behavior, lifeless reactions, bizarre behavior, walked with a stagger, talked with a slur, and was uncooperative and unpleasant. This form was unsigned.

55.     At all times relevant hereto, a Trumbull County Justice Center- Sheriff's Office (Jail Division) Visual Observation form, dated August 6, 2022, at 5:08 PM, indicated McClure's physical condition at intake as "(fair) intoxicated." The form further indicated that McClure appeared under the influence of unknown substances. The form was unsigned but indicated McClure was seen by Defendant MA SIMMONS.

56.     At all times relevant hereto, Trumbull County Jail Policies and Procedures with respect to intoxication and detoxification indicate:

"The following applies to all Health Care Staff and Corrections Division Personnel:

    a.  Medical staff are contacted and have a role in the assessment of intoxication and withdrawal. Any protocols are approved by the health authority. *Life threatening intoxication or withdrawal shall result in transportation to a local hospital.*

    b.  Intake Procedures:

        i.  Inmates experiencing severe, life-threatening intoxication (overdose) or withdrawal (e.g., the inability to ambulate without assistance) upon arrival to the jail *should not be accepted*.

        ii.  Qualified health care professionals or health trained security staff conducting the receiving screen *shall* inquire into the inmate's past present drug and alcohol use and history of withdrawal.

    c.  A qualified health care professional *shall* follow appropriate clinical protocols for the assessment, observation and treatment of inmates who screen positive, who report heavy daily or near daily use of alcohol or daily use of opioids, or are manifesting symptoms of intoxication withdrawals.

d.  If an inmate does not improve or worsens in spite of treatment provided, the qualified health professional shall contact the jail physician.

e.  Inmates experiencing severe, life-threatening intoxication (overdose) withdrawals *shall be immediately transferred to the hospital*.

f.  In determining the level of symptoms that can be managed safely at the jail, the jail physician shall take into account the level of medical supervision that is available at all times.

g.  Detoxication *shall* be performed only under the supervision of a physician in accordance with local, state and federal law.

h.  Health care staff *shall* follow the clinical protocol on opiate withdrawal for all inmates on methadone or similar substance." *Emphasis added.*

57.  Colton McClure, presented to Trumbull County Jail in the throes of life-threatening intoxication, on August, 6, 2022, and was not immediately transferred to the hospital.

58.  The clinical protocol for opiate intoxication was not followed for Colton McClure, despite his admission of last using Heroin on that same day and the knowledge that he was under the influence of a *Sublocade* injection, a similar substance to methadone.

59.  The jail physician was not contacted or notified regarding Colton McClure's severe, life-threatening intoxication status.

60.  During the entirety of Colton McClure's detainment, his symptoms, of any level, would be monitored by medical assistants.

61.  Colton McClure presented to the Trumbull County Jail with the attributes of a chronic opioid abuser as demonstrated by his past incarcerations at Trumbull County Jail, and his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which Defendants MUSOLINO, BACH and MA SIMMONS, were

deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention.

62.     As evidenced by the above-described symptoms, Colton McClure presented to Trumbull County Jail in the throes of life-threatening intoxication, admitting to using Heroin that same day, under the influence of Sublocade injection, while exhibiting lifeless reactions, bizarre behavior, walking with a stagger and talking with a slur.

63.     Over the time period of Colton McClure's detention at the Trumbull County Jail, his health rapidly deteriorated and at all times relevant hereto was experiencing an emergency medical episode.

64.     At all times relevant hereto, Defendants MUSOLINO, BACH and MA SIMMONS, observed and became aware of Colton McClure's continuing medical emergency as demonstrated by his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which each was deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention to Colton McClure.

65.     McClure was placed in "Booking male holding cell 3" from approximately 5:20 PM to 11:32 PM, on August 6, 2022.

66.     At all times relevant hereto, "Booking male holding cell 3" was subject to the audio/visual monitoring system with which the Trumbull County Jail was equipped.

67.     At all times relevant hereto, Colton McClure was within view of the audio/visual monitoring system.

68.     At all times relevant hereto, Colton McClure was experiencing an ongoing medical emergency which required immediate medical assistance.

69.     Throughout the six hours McClure spent in this cell, he appeared erratic, banging on the cell door and constantly moving around the cell, while no officers came to check on him.

70.     At 6:59 PM, McClure took his shirt off and tied it on his head. He put his shirt back on by 7:04 PM.  By 7:13 PM, McClure was completely naked, yelling and banging on the door. No officers or medical staff came to check on him or offer medical attention.  McClure put his pants back on around 7:30 PM and continued banging on the cell door while staff ignored him. Around 10:00 PM, McClure appeared distraught and screaming out in pain, while continuously moving about the cell.

71.     Below are still images from the cell video captured on August 6, 2022, of MCCLURE'S confinement in "Booking male holding cell 3":



72.     At approximately 7:53 PM on August 6, 2022, Defendant MCCORD, entered a jail incident report, reporting "At approximately 7:50 PM, inmate McClure stated that he wanted to kill himself. For this reason, he will be placed on 58 status until cleared by Dr. Malvasi."  This incident report was entered while McClure was in "booking male holding cell 3," where no officers or medical staff entered his cell at any time until 11:30 PM, when he was relocated.

73.     At 10:30 PM, a handwritten progress note believed to be entered by MA SIMMONS, stated, "Checked on inmate, being down in booking since 5:00 PM and *highly*

*intoxicated*. Inmate was in holding cell 3 kicking and hitting the door and running around the cell. His vitals were not checked."

74.     At approximately 11:30 PM, Defendants, MUSSOLINO, OFFICER JOHN DOE ONE and OFFICER JOHN DOE TWO, entered McClure's cell, hand-cuffed him and took him to "booking male holding cell 1."  As Defendants placed McClure in the new cell, the jail video visibly and audibly depicts him screaming out in pain.  Defendants leave the cell at approximately 11:33 PM, leaving McClure lying on the floor writhing in pain.

75.      Below are still images from the cell video captured on August 6, 2022 at approximately 11:33 PM:

 

76.     At all times relevant hereto, "Booking male holding cell 1" was subject to the audio/visual monitoring system with which the Trumbull County Jail was equipped.

77.     At all times relevant hereto, Trumbull County Jail was equipped with an audio/visual monitoring system and at all times relevant hereto, Colton McClure was within view of the audio/visual monitoring system.

78.     At all times relevant hereto, Colton McClure was experiencing an ongoing medical emergency which required immediate medical assistance.

79.     McClure was left in "Booking male holding cell 1" from approximately 11:33 PM on August 6, 2022 until 3:06 AM on August 7.  During this time, McClure continuously moved about the cell erratically and never slept, while screaming out in pain.  McClure removed his pants, leaving him completely naked, and continued to frantically move about the cell before replacing them.  He did this on multiple occasions throughout his stay in "booking male holding cell 1."  McClure did not sit still for one single minute while in this booking cell.  He would lay down on the floor and immediately get back up and continue erratically moving about the cell.  McClure was not provided with medical attention at any time.

80.     Below are still images from the cell video captured during MCCLURE'S confinement to "Booking male holding cell 1":





81.     Colton McClure presented to the Trumbull County Jail with the attributes of a chronic opioid abuser as demonstrated by his past incarcerations at Trumbull County Jail, the knowledge that he was prescribed Sublocade injections, the fact that he used Heroin on that same day, and his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which Defendants MCCORD, MUSSOLINO, OFFICER JOHN DOE ONE and OFFICER JOHN DOE TWO, and all other Trumbull County Defendants, were deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention to Colton Mclure.

82.     As evidenced by the above described symptoms, Colton McClure presented to Trumbull County Jail in the throes of life-threatening intoxication, exhibiting lifeless reactions, bizarre behavior, walking with a stagger and talking with a slur.

83.     Over the time period of Colton McClure's detention at the Trumbull County Jail, his health rapidly deteriorated and at all times relevant hereto was experiencing an emergency medical episode.

84.     At all times relevant hereto, Defendants MCCORD, MUSSOLINO, OFFICER JOHN DOE ONE and OFFICER JOHN DOE TWO, and all other Trumbull County Defendants, observed and became aware of Colton McClure's continuing medical emergency as demonstrated by his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal,

and mood symptoms, for which each was deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention to Colton McClure.

85.    At all times relevant hereto, Colton McClure was experiencing an emergency medical episode of which Defendants MCCORD, MUSSOLINO, OFFICER JOHN DOE ONE and OFFICER JOHN DOE TWO, and all other Trumbull County Defendants were aware of and were deliberately indifferent toward.

86.    At 3:06 AM on August 7, 2022, McClure was taken to the "fingerprint room," by Defendants MUSOLINO, ZAKRAJSEK, and FIFE.  The jail video shows McClure unable to stand for his mugshot and Defendants holding him up in order to take the photo.  McClure was extremely unsteady, continuously swaying and unable to stand on his own while two officers attempted to fingerprint him.

87.    Below are still images from the "fingerprint room" video captured on August 7, 2022:





88.    As Defendants MUSOLINO, ZAKRAJSEK, and FIFE escorted McClure back from the "fingerprint room," he defecated himself in the hallway.

89.    While attempting to take McClure's fingerprints, Defendant FIFE grabbed the handcuffed and visibly incoherent McClure by the back of the neck and pushed him towards the ground.

90.    Defendant FIFE authored an incident report at 4:21 AM on August 7, 2022.  He reported that on August 7, 2022, at 3:10 AM, officers, MUSOLINO, ZAKRAJSEK and himself attempted to book inmate McClure who appeared to be "*heavily intoxicated on several drugs*." FIFE and MUSOLINO had to stabilize McClure while ZAKRAJSEK took the photos. FIFE attempted to take Mclure's fingerprints while ZAKRAJSEK stabilized him.

91.    Defendant FIFE further reported that McClure repeatedly kept dropping his body weight, became more aggressive and "attempted to bite me."  After that incident, the decision was made to escort McClure back to the holding cell.  FIFE reported, "On the way, McClure defecated himself. The decision was made to take him into male change out where McClure defecated on the floor and picked up the feces and throwing it at the wall."  FIFE reported that McClure was then escorted to his cell by OIC KENNEY, ZAKRAJSEK, MUSOLINO and DREIER.  FIFE, nor

OIC KENNEY, ZAKRAJSEK, MUSOLINO or DREIER requested medical attention for McClure who was experiencing an obvious medical emergency.

92.     Defendant MUSSOLINO authored an incident report at 4:23 AM on August 7, 2022.  He reported "The inmate remained *highly intoxicated* since being accepted into the facility at 5:08 PM and therefore was placed in hand restraints" before taking to booking. MUSSOLINO reported that "Inmate McClure refused to stand during the photo portion of the book process therefore was stood up and stabilized by Officer Fife and Myself."  MUSSOLINO then reported that "Inmate McClure became passively resistant and again attempted to refuse the officers taking his fingerprints. The inmate attempted to drop his weight to the floor and was stood up by officer Zakrajsek and Fife."

93.     Defendant MUSSOLINO further reported Mclure was taken to the male change out by FIFE, ZAKRAJSEK, KENNEY, DREIER and himself.  He reported, "Once in the male change out, the inmate laid in the shower where he defecated and threw it at the wall however after multiple directives complied and stood up."  MUSSOLINO nor FIFE, ZAKRAJSEK, KENNEY or DREIER requested medical attention for McClure who was experiencing an obvious medical emergency.

94.     Defendant ZAKRAJSEK authored an incident report at 4:27 AM, stating, "Inmate McClure was under the influence of an unknown substance which was causing him to have erratic movements."  ZAKRAJSEK further reported, "While attempting to acquire inmate McClure's fingerprints he became uncooperative falling to the ground but he was adamant that he wanted to complete the process.  At one point Inmate McClure attempted to place his head on my arm in what I perceived a kiss.  Inmate McClure then attempted to bite Officer Fife while attempting to kick me.  The decision was then made to stop the fingerprint portion and escort him to the shower."

95.     Defendant ZAKRAJSEK further reported that while they were standing outside of McClure's holding cell, he informed officers he was defecating himself. ZAKRAJSEK reported that they attempted to hurry McClure into the change out room but were unsuccessful and he defecated his pants, causing a piece to land on the floor in booking. ZAKRAJSEK further reported that while in the shower, McClure again defecated on the floor, and at one point, picked up his feces and threw it at the wall. ZAKRAJSEK did not request medical attention for McClure who was experiencing an obvious medical emergency.

96.     MA SIMMONS made another hand written entry at 3:15 AM, stating, "Inmate was taken to T3. Inmate had defecated himself in booking, made no request for medical attention."

97.     Colton McClure presented to the Trumbull County Jail with the attributes of a chronic opioid abuser as demonstrated by his past incarcerations at Trumbull County Jail, the knowledge that he was prescribed Sublocade injections, the fact that he used Heroin on that same day, and his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which Defendants MUSOLINO, ZAKRAJSEK, FIFE, KENNEY, DREIER, MA SIMMONS, and all other Trumbull County Defendants, were deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention to Colton Mclure.

98.     As evidenced by the above described symptoms, Colton McClure presented to Trumbull County Jail in the throes of life-threatening intoxication, admitting to using Heroin that same day, under the influence of Sublocade injection, while exhibiting lifeless reactions, bizarre behavior, walking with a stagger and talking with a slur.

99.    Over the time period of Colton McClure's detention at the Trumbull County Jail, his health rapidly deteriorated and at all times relevant hereto was experiencing an emergency medical episode.

100.    At all times relevant hereto, Defendants MUSOLINO, ZAKRAJSEK, FIFE, KENNEY, DREIER, MA SIMMONS, and all other Trumbull County Defendants, observed and became aware of Colton McClure's continuing medical emergency as demonstrated by his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which each was deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention to Colton McClure.

101.    At all times relevant hereto, Colton McClure was experiencing an emergency medical episode of which Defendants MUSOLINO, ZAKRAJSEK, FIFE, KENNEY, DREIER, MA SIMMONS, and all other Trumbull County Defendants were aware of and were deliberately indifferent toward.

102.    At approximately 3:20 AM on August 7, 2022, the jail video shows McClure wearing a suicide gown, escorted by five officers, Defendants, FIFE, ZAKRAJSEK, KENNEY, DREIER, and MUSSOLINO. Throughout the escort, McClure appears unable to properly walk while officers hold up his body and propel him forward.

103.    Below are still images from the video captured on August 7, 2022 at approximately 3:20 AM:



104.    McClure was placed in cell "3A-103" at approximately 3:22 AM on August 7, 2022.  He was screaming out in pain and appeared extremely distraught as officers laid him down on the platform in the cell. The officers left McClure laying on the platform, appearing incoherent and in an obvious medical emergency.

105.    Below are still images from the cell video captured on August 7, 2022 at approximately 3:22 AM:



106.    At all times relevant hereto, "3A-103" was subject to the audio/visual monitoring system with which the Trumbull County Jail was equipped.

107.    At all times relevant hereto, Colton McClure was within view of the audio/visual monitoring system.

108. At all times relevant hereto, Colton McClure was experiencing an ongoing medical emergency which required immediate medical assistance.

109. Trumbull County Corrections officers viewed McClure in his cell, naked, covered in welts, moving about erratically, and talking to himself for the next 15 hours. He did not eat or sleep at any time. No officers or medical staff came to check on him during this time. He was not provided with any medical attention during this time.

110. Below are still images from the cell video captured on August 7, 2022, during MCCLURE'S confinement to "3A-103":

 

111. At all times relevant, the Trumbull County Jail Division inmate log for McClure indicated that he refused his meal trays at 6:04 AM, 12:06 PM, and 4:34 PM on August 7, 2022. There is no indication that any officers checked on McClure during this time, during which he was experiencing a serious medical emergency.

112. MA THOMAS was working as a medical assistant at Trumbull County Jail on August 7, 2022. Upon arrival to the jail, MA THOMAS was briefed as to the medical condition of Colton McClure and knew that he was within the throes of an ongoing medical emergency as demonstrated by his admission of using Heroin on August 6, 2022, the knowledge that he was under the influence of Sublocade injection, and his readily apparent cognitive, physical, emotional,

psychological, behavioral, gastrointestinal, and mood symptoms in conjunction with exhibiting lifeless reactions, bizarre behavior, walking with a stagger and talking with a slur. McClure presented with symptoms of life-threatening intoxication that any lay person would have recognized and Defendant MA THOMAS was aware of same.

113.    That on August 7, 2022, at 8:11 PM, Defendant, SGT BARBARA CARDUCCI, authored and incident report stating, "After reviewing some video of Inmate McClure I decided to contact MA Thomas and request that she do a vitals check on this inmate.  CO Musolino and Dillon escorted her to 3A-103 at approximately 6:22 PM.  At 6:40 PM, MA Thomas came to booking and said we can send him to the hospital.  I contacted dispatch at this time.  At 6:43 PM I witnessed CO Dillon enter his cell again and he began chest compressions."

114.    Below are still images from the cell video captured on August 7, 2022, at approximately 6:22 PM:

 



115.    That Defendants MUSSOLINO, DILLON and MA THOMAS, entered McClure's cell at 6:27 PM on August 7, 2022.  McClure at this time was lying naked on the floor, twitching while officers handcuffed him and MA THOMAS attempted to take his vitals. The officers and MA THOMAS left the cell at 6:33 PM. McClure was lying on the floor twitching at this time. McClure appeared to go completely lifeless on camera at 6:34 PM.

116.    In a narrative supplement dated, August 7, 2022 at 8:38 PM, Defendant DILLON reported that after he exited McClure's cell, using the cell camera, he could not tell if McClure was breathing, so he made his was to his cell and checked for a pulse and there was none present.

117.    MA THOMAS entered a handwritten progress note, dated August 7, 2022, stating, "Got a call from SGT Carducci at approximately 6:30 PM to check on inmate, says he looks really bad.  T3 to assess inmate and obtain vitals, inmate felt very cold and very disoriented, he was whispering things and rocking his head back and fourth."

118.    MA THOMAS further reported at this time, "I was not able to obtain a pulse or spO2%, bp was very faint reading at 120/70.  I then proceeded to come back down to call my supervisor, I called doc and explained to him that this man was in bad shape and I believed he needed to be sent to ER. Dr. Malvasi agreed and proceeded to send him out."  MA THOMAS did

not immediately call 911 when she was unable to find a pulse or spO2%.  None of the corrections officers present called 911 when MA THOMAS could not find a pulse or spO2%.

119.     Defendant MUSOLINO authored an incident report on August 7, 2022 at 7:48 PM. He reported that he escorted MA THOMAS to McClure's cell for an assessment and placed hand restraints on the inmate. MUSOLINO reported that once MA THOMAS completed the vitals check, MA THOMAS stated she was unable to get a reading on her pulse oximeter and that she was going back to the medical station to contact her supervisor for further guidance. MA THOMAS did not call 911 right away.  MUSOLINO did not call 911 after being informed of the negative pulse oximeter reading. MUSOLINO reported that a short time later, MA THOMAS came back and advised they would need to send McClure to the hospital.

120.     At all relevant times hereto, Defendants SGT CARDUCCI and OFFICER DILLON were duty-bound to monitor the audio-visual equipment to ensure the safety and welfare of detainees which Defendants SGT CARDUCCI and OFFICER DILLON improperly, unlawfully, and otherwise failed to do, and thereby acted with deliberate indifference toward Colton McClure's known ongoing medical emergency.

121.     At all relevant times hereto, Defendants OFFICER GARY MUSOLINO, OFFICER JOSE MCCORD, OFFICER ZACHARY FERGUSON, OFFICER MEGAN FRAME, OFFICER SEAN MASKALUK, OFFICER ELIJAH BRICKER, OFFICER RANDI MCELHINNY, were scheduled to work the day shift at Trumbull County Jail and were present during the early morning and into the evening on August 7, 2022.  The aforementioned Defendants were duty-bound to monitor Plaintiff personally and via the audio/visual equipment to ensure the safety and welfare of detainees, which they failed to do, and thereby acted with deliberate indifference toward Colton McClure's known ongoing medical emergency.

122.     Over the time period of Colton McClure's detention at the Trumbull County Jail, his health rapidly deteriorated and at all times relevant hereto was experiencing an ongoing emergency medical episode.

123.     At all times relevant hereto, Defendants, SGT CARDUCCI and OFFICER DILLON observed and were aware of Colton McClure's continuing medical emergency as demonstrated by his readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which each was deliberately indifferent toward such medical emergency and did not seek or provide necessary medical attention to Colton McClure.

124.     At all times relevant hereto, Colton McClure was experiencing an ongoing emergency medical episode, of which Defendants, SGT CARDUCCI and OFFICER DILLON were aware and were deliberately indifferent toward.

125.     At all relevant times hereto, Defendants, OFFICER GARY MUSOLINO, OFFICER JOSE MCCORD, OFFICER ZACHARY FERGUSON, OFFICER MEGAN FRAME, OFFICER SEAN MASKALUK, OFFICER ELIJAH BRICKER, OFFICER RANDI MCELHINNY were aware, deliberately indifferent, and failed to intervene concerning Colton McClure's ongoing medical emergency.

126.     At times relevant hereto, Trumbull County Jail Policies and Procedures with respect to suicide prevention indicate:

"The following procedures applies to all health care staff and corrections division personnel.

   a. A suicidal inmate is checked at varied intervals *not to exceed ten minutes*. Observation checks at varied intervals not to exceed 10 minutes will be documented and tracked in the housing log unit.

   b. If an inmate is identified at the receiving screening or initial health assessment as being potentially suicidal, they are to be placed on appropriate precautions and referred to mental health staff.

c. Health care staff shall communicate pertinent information to security staff concerning suicidal inmates such when inmates are placed on suicide watch, observation intervals, property restrictions, and when inmates are removed from suicide watch. *All health care staff, including medical and mental health, on all shifts are aware of the status of suicidal inmate.*" Emphasis added.

127. Although McClure was classified as a suicide risk, he was not checked on every ten minutes and was not referred to mental health staff.

128. Prior to the discovery of Colton McClure at approximately 6:30 PM on August 7, 2022, each and every defendant failed to perform a physical check on Colton McClure and/or failed to intervene concerning the ongoing emergency medical episode suffered by Colton McClure.

129. Despite knowledge of Colton McClure's life threatening intoxication, as demonstrated by his admission of using Heroin on August 6, 2022, knowledge that he was under the influence of Sublocade injection, while exhibiting lifeless reactions, bizarre behavior, walking with a stagger and talking with a slur, each and every Defendant failed to examine, observe, or provide medical treatment, prior to Colton McClure's death, contrary to their duties outlined by Trumbull County Jail Department Policies and the Constitution of the United States.

130. At all times relevant hereto, each and every Defendant failed to timely and/or appropriately perform physical jail cell checks as is required of them by Trumbull County Jail's Department Policies specifically the failure to check, observe, and/or monitor the cell occupied by Colton McClure for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by Colton McClure.

131. At all times relevant hereto, each and every Defendant was duty-bound and failed to monitor the visual and audio monitoring equipment, of which the Trumbull County Jail was equipped, to detect events such as medical episodes, which each and every Defendant improperly,

unlawfully, and otherwise failed to do, and therefore failed to detect the medical episode experienced by Colton McClure.

132.    At all times relevant hereto, each and every Defendant was duty-bound and failed to check, observe, and/or monitor the cell occupied by Colton McClure for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by Colton McClure.

133.    At all times relevant hereto, each and every Defendant failed to timely and/or appropriately monitor Colton McClure utilizing the video and audio monitoring equipment as is required of them.

134.    At all times during the incarceration of Colton McClure at the Trumbull County, Colton McClure behaved in such a fashion that was highly evident that he was experiencing a medical episode, was rapidly deteriorating, and needed prompt and immediate medical treatment for which each and every Defendant improperly, unlawfully, and otherwise failed to observe contrary to the duties owed to Colton McClure by way of the Constitution of the United States.

135.    At all times relevant hereto, Colton McClure's symptoms were so severe and obvious that his employer had recognized the necessity of immediate medical attention the day prior.

136.    At all times relevant hereto, each and every Defendant knew Colton McClure was suffering from a serious medical condition requiring immediate medical care and treatment and ignored Colton McClure, amounting to deliberate indifference in violation of Colton McClure's constitutional rights.

137.    At all times relevant hereto, each and every Defendant knew or should have known of Colton McClure's delicate state and deteriorating condition.

138.    At all times relevant hereto, each and every Defendant failed to initiate close observation of Colton McClure, and/or take proper precautions to protect her, and/or take steps to properly and adequately monitor her.

139.    Each and every Defendant improperly, unlawfully, and otherwise ignored Colton McClure and left him in a cell without further monitoring until he was discovered unresponsive at around 6:30 PM on August 7, 2022, and/or each and every Defendant improperly, unlawfully, and otherwise failed to intervene concerning the ongoing emergency medical episode suffered by Colton McClure.

140.    EMS arrived at the scene at 6:47 PM on August 7, 2022. McClure was found pulseless and apneic.  Cardiac monitor pads were placed and compressions resumed.  Upon arrival at the ambulance, McClure was found to be pulseless and in v-tach.  McClure remained pulseless as he was transported to the ER.

141.    McClure arrived by EMS at Trumbull Regional Medical Center ER at approximately 7:03 PM on August 7, 2022.  His history of present illness indicated that jail staff reported they could not find a pulse; however, he was breathing and soon after stopped breathing. Enroute to the ER, McClure was intubated, shocked twice, given 4 Epis and 1 Narcan and 300 of Amio.

142.    McClure was declared dead on August 9, 2022 at 5:55 AM with primary reason being hemodynamic instability secondary to anoxic encephalopathy post cardiac arrest. Toxicology analysis of McClure's urine specimen confirmed the presence of methamphetamine, fentanyl and acetyl fentanyl.

143.     The Trumbull County Coroner's report regarding McClure indicated that he suffered non-specific blunt force injuries shortly prior to or at the time of his initial cardiorespiratory arrest event.

144.     Following McClure's death, Defendant SGT CARDUCCI, made an entry in McClure's inmate log on August 9, 2022, at 9:45 AM, stating, "Asked MA THOMAS to do an eval on this inmate."  This was the only entry in McClure's inmate log requesting medical treatment for him. The medical treatment was requested after his death.

145.     At all relevant times hereto, *Ohio Admin. Code 5120:1-8-09* provides that prisoners must have access to quality health care.  The medical staff professionals must be appropriately licensed or certified. Prisoners must have timely access to medical care.

146.     At all relevant times hereto, *Ohio Admin. Code 5120:1-8-09 (B)* provides that before admission into jail, health-trained personnel shall inquire about … and the health authority shall develop policies for the acceptance or denial of admission for: Current serious or potentially serious medical or mental health issues needing immediate attention; Observe for signs of and inquire about drug and/or alcohol intoxication or abuse.

147.     At all relevant times hereto, *Ohio Admin. Code 5120:1-8-09 (W)* provides that the health authority shall develop specific policies and protocols in accordance with local, state and federal laws for the treatment and observation of inmates manifesting symptoms of intoxication or detoxification from alcohol, opiates, hypnotics, or other drugs.  Specific criteria are established for immediately transferring inmates experiencing severe, life-threatening intoxication (overdose) or detoxification symptoms to a hospital or detoxification center.

148.     The Ohio Department of Rehabilitation and Correction found that the medical staff at Trumbull County Jail did not follow the jail's policy, procedure, and practice for intoxication and detoxification with regards to Colton McClure, in violation of jail standard *5120:1-8-09 (W)*.

149.     At all relevant times, Defendants, DR. MALVASI, and DEFENDANT MEDICAL STAFF, failed to immediately refer MCCLURE for evaluation by a medical doctor.

150.     At all relevant times, DR. MALVASI, and DEFENDANT MEDICAL STAFF, failed to timely and appropriately assess the patient's vital signs.

151.     Defendants, DR. MALVASI, and DEFENDANT MEDICAL STAFF, despite their knowledge of McClure's ongoing and worsening symptoms, all failed to refer him to a higher level of care to assess, evaluate, or treat his serious medical needs. The failure of which resulted in Colton's McClure's excruciatingly painful and untimely eventual death on August 9, 2022.

152.     At all times relevant hereto, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON were aware that DR. MALVASI had repeatedly been sued for deliberate indifference as a result of deficient and/or non-existent medical care while under contract with Trumbull County to provide care to inmates at the Trumbull County Jail.

153.     At all times relevant hereto, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON hired and/or retained DR. MALVASI and/or MALVASI, LLC with knowledge of case styled, *Lewis Cairns v. Trumbull County Board of Commissioners et. al. N. Dist. OH (2015)* and case styled, *Alfonso Askew v. Trumbull County et. al. N. Dist. OH (2021)*, wherein it was alleged that Dr. Malvasi and Dr. Malvasi's medical staff were deliberately indifferent to an inmate's serious medical need which should have been so obvious to require medical attention that even a lay person would have recognized the need.

154.     At all times relevant hereto, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON continued to contract with Defendant DR. MALVASI and/or MALVASI, LLC to provide medical care to people in custody in the Trumbull County Jail, despite their knowledge of DR. MALVASI'S inadequate medical care to inmate.

155.     That pursuant to Ohio Rev. Code §2305.113, on July 27, 2023, Plaintiff did properly serve upon Defendants, DR. PHILLIP MALVASI, D.O., LLC, PHILLIP MALVASI, D.O., SHERIFF PAUL S. MONROE, MAJOR DANIEL MASON, JENNIFER BACH, MA THOMAS, MA TAYLOR SIMMONS and CARLA AHART, LPN, written notice of intent to file a medical malpractice claim against them and extending the time period within which to commence an action by an additional 180 days.

### COUNT I
### 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE
### ALL DEFENDANTS

156.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

157.     As a citizen of the United States and pretrial detainee at the Trumbull County Jail located in the State of Ohio, Plaintiff Decedent, MCCLURE, was entitled to all rights, privileges, and immunities accorded to all pretrial detainees of the State of Ohio and of the United States.

158.     At all times relevant, Plaintiff Decedent, MCCLURE, had a right to adequate and sufficient medical care and/or treatment such that his life would be preserved and he at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of his health and well-being.

159.     That all Defendants, TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and

DEFENDANT MEDICAL STAFF, were deliberately indifferent to MCCLURE's serious medical needs when they failed to provide MCCLURE with objectively reasonable and constitutionally adequate medical care.

160.    At all relevant times hereto, the actions of Defendants, DR. MALVASI, DEFENDANT MEDICAL STAFF and DEFENDANT CORRECTIONS OFFICERS, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Defendants, TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI.

161.    At all relevant times hereto, Defendants, TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI approved, authorized and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

162.    At all relevant times hereto, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON were responsible for the Trumbull County Jail, including the care and treatment of people, like Colton McClure, in custody therein.  TRUMBULL COUNTY, its Sheriff, SHERIFF MONROE, and its jail administrator, MAJOR MASON, are required to ensure that policies, practices, and customs in the Trumbull County Jail comply with federal and Ohio law concerning the treatment of persons in custody, including the right to constitutionally-adequate medical care.

163.    At all relevant times hereto, Defendants MALVASI, LLC, and DR. MALVASI were responsible for medical care in the Trumbull County Jail for people, like Colton McClure, in custody therein.  MALVASI, LLC, and DR. MALVASI are required to ensure that the policies,

practices, and customs in the Trumbull County Jail concerning medical care comply with federal and Ohio law concerning the treatment of persons in custody.

164.    That the actual and de facto policies, practices, and customs of TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI, and the failure of TRUMBULL COUNTY, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI to hire, train, supervise, monitor, discipline, counsel and/or control jail correctional and medical staff conduct to ensure constitutionally adequate provision of medical care in the Trumbull County Jail for people who suffer serious medical needs, like MCCLURE, while in custody therein, demonstrate deliberate indifference to the serious medical needs of people who are in the custody of Trumbull County Jail.

165.    That the unconstitutional actions of Defendants DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, as alleged in this Complaint were part and parcel of a widespread jail policy, practice, and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, officials, officers, and divisions of the TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI.

166.    The aforementioned actual and de facto policies, practices, and customs include a pattern of acts of deliberate indifference to serious medical needs, causing harmful consequences to people who are in the jail's custody.

167.    The actual and de facto policies, practices and customs of TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI and the failure of TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or

DR. MALVASI to hire, train, supervise, monitor, discipline, counsel and/or control jail correctional and medical staff conduct were inadequate and unreasonable.

168.    These interrelated policies, practices, and customs individually and together were maintained and implemented with deliberate indifference and encouraged the Defendants, DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, to commit the unconstitutional acts and/or omissions against MCCLURE as described herein.

169.    The actions and/or omissions committed by Defendants, DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, demonstrated a reckless disregard to Plaintiff Decedent, MCCLURE'S serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to MCCLURE and caused constitutional deprivation of his individual rights including, but not limited to the following ways:

    a.  Deliberately ignoring Plaintiff Decedent, MCCLURE's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

    b.  Failing to deny intake to an inmate presenting with signs and symptoms of life-threating intoxication as required by Trumbull County Jail Policy.

    c.  Failing to immediately transport to a local hospital, an inmate presenting with life threatening intoxication, as required by Trumbull County Jail Policy.

    d.  Failing to provide or obtain appropriate medical care to MCCLURE, who was experiencing a medical emergency as defined by Trumbull County Jail Policy.

    e.  Failing to implement appropriate clinical protocols for the assessment, observation and treatment of MCCLURE who explained during intake that he used Heroin on that same day and that he was prescribed *Sublocade* 45 day injections, as required by Trumbull County Jail Policy.

    f.  Failing to follow appropriate opioid withdrawal protocols for MCCLURE who explained during intake that that he used Heroin on that same day and that he was prescribed *Sublocade* 45 day injections (a similar substance to methadone), as required by Trumbull County Jail Policy.

g.  Failing to notify the jail physician regarding MCCLURE's life-threatening intoxication status, as required by Trumbull County Jail Policy.

h.  Failing to perform observation checks at varied intervals not to exceed 10 minutes, for an inmate who was classified for suicide precautions, as required by Trumbull County Jail Policy.

i.  Failing to refer MCCLURE, an inmate on suicide precaution status, to a mental health provider, as required by Trumbull County Jail Policy.

j.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent cognitive impairment;

k.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent emotional symptoms;

l.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent psychological symptoms;

m.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent behavioral symptoms;

n.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent gastrointestinal symptoms;

o.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent mood symptoms;

p.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, recent heroin use and/or withdrawal;

q.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent inability to consume food;

r.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent inability to consume liquids;

s.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious weakness;

t.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious fatigue;

u.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious unusual/suspicious behavior;

v.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious lifeless reactions;

w.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious staggered gait;

x.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious slurred speech;

y.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE, who explained he was under the influence of heroin and Sublocade injection;

z.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE, who was obviously in the throes of life-threatening intoxication;

aa. Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's obvious confusion and diminished mental capacity;

bb. Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious dehydration;

cc. Failure to obtain treatment for Plaintiff Decedent, MCCLURE, by emergently transferring him to a hospital for medical treatment;

dd. Failure to obtain treatment for Plaintiff Decedent, MCCLURE, by administering the appropriate medical attention as required by jail policy for life-threatening intoxication;

ee. Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, MCCLURE;

ff. Failure to provide close monitoring and supervision for Plaintiff Decedent, MCCLURE;

gg. Failure to obtain electrolyte replacement for Plaintiff Decedent, MCCLURE;

hh. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, MCCLURE;

ii. Any and all other breaches as they become known throughout the course of this litigation.

170.  The conduct of Defendants as described above, deprived Plaintiff Decedent, MCCLURE, of his clearly established rights, privileges and immunities in violation of the Fourteenth Amendment of the Constitution of the United States.

171.    As a direct and proximate result of the actions and/or omissions of Defendants, Plaintiff Decedent, MCCLURE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent hypoxic/ischemic encephalopathy with multisystem organ failure due to cardiorespiratory arrest with post resuscitative anoxic syndrome due to acute mixed fentanyl, acetal fentanyl and methamphetamine toxicity.

172.    As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

173.    The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff requests the following relief:

a.  Reasonable medical, hospital, funeral and burial expenses;

b.  Conscious pain and suffering;

c.  Loss of financial support;

d.  Loss of service;

e.  Loss of gifts or other valuable gratuities;

f.  Loss of comfort, society and companionship;

g.  Compensatory and punitive damages;

h.  Reasonable attorney fees, costs and interest; and

i.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

**COUNT II**
**42 U.S.C. § 1983 – IMPROPER HIRING/RETENTION; FAILURE TO**
**TRAIN/SUPERVISE; CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION**
**OF FEDERAL RIGHTS; INADEQUATE POLICY DEFENDANTS AS TO**
**TRUMBULL COUNTY, SHERIFF PAUL S. MONROE & MAJOR DANIEL MASON**

174.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

175.     The conduct of Defendants DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, as described throughout, was performed under the color of law while Defendants were working for and with the authority of Defendant TRUMBULL COUNTY.

176.     Defendants TRUMBULL COUNTY and DR. MALVASI have repeatedly been sued for deliberate indifference as a result of deficient and/or non-existent medical care.

177.     That case styled *Lewis Cairns v. Trumbull County Board of Commissioners et. al. N. Dist. OH (2015),* wherein it was alleged that Dr. Malvasi, Dr. Malvasi's medical staff and Trumbull County correction officers were deliberately indifferent to an inmate's serious medical need which should have been so obvious to require medical attention that even a lay person would have recognized the need, was at all times known to Defendants, TRUMBULL COUNTY and MAJOR DANIEL MASON, and their acquiescence to said deliberate indifference constituted the ratification of it as a custom, practice or policy.

178.     That case styled *Alfonso Askew v. Trumbull County et. al. N. Dist. OH (2021),* wherein it was alleged that Dr. Malvasi, Dr. Malvasi's medical staff and Trumbull County correction officers were deliberately indifferent to an inmate's serious medical need which should have been so obvious to require medical attention that even a lay person would have recognized the need, was at all times known to Defendants, TRUMBULL COUNTY and MAJOR DANIEL

MASON, and their acquiescence to said deliberate indifference constituted the ratification of it as a custom, practice or policy.

179. That the process in which DR. MALVASI and his staff were hired and retained was constitutionally inadequate in light of the improper medical care being provided by DR. MALVASI and was a moving force behind COLTON MCCLURE'S death.

180. At all relevant times, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON had a custom, pattern, and/or practice of failing to supervise and/or train Defendants DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, and other staff in a reasonable manner to prevent such conduct.

181. The failure of Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, to properly supervise and/or train its personnel or otherwise create and enforce a custom policy or procedure, who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such as was caused to Plaintiff Decedent.

182. That Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON were aware or should have been aware that Defendants DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, and its correction personnel would confront situations as described herein and that a substantial risk of serious harm existed, and was conscious of the risk of harm posed by Defendants DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF.

183.    At all times relevant, there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

184.    At all times relevant, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, through their appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs, and TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON ratified the behavior and conduct of its employees including Defendants, DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF.

185.    At all times relevant, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, were on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

186.    Defendant, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, and their policy makers acquiesced in the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

187.    It was the custom or practice of Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, to tolerate the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the corrections officers and/or Jail medical staff to continue to engage in the unlawful behavior.

188.    Instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the corrections officers refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, condoned, ratified or encouraged the corrections officers and jail medical staff to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

189.    Instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, refused to discipline the medical staff at the Jail, failed to fully investigate inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON, condoned, ratified or encouraged the Jail medical staff and correction officers to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

190.    As a direct and proximate result of Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON's, custom or practice of tolerating the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendants, DR. MALVASI, DEFENDANT CORRECTIONS OFFICERS and DEFENDANT MEDICAL STAFF, demonstrated a reckless disregard to MCCLURE's serious

medical needs that were so obvious that even a layperson would easily recognize the necessity for medical intervention, which posed an obvious risk of substantial harm to MCCLURE and caused constitutional deprivation of his clearly established rights, privileges and immunities in violation of the Fourteenth Amendment of the Constitution of the United States, including, but not limited to the following acts and/or omissions:

    a.   Deliberately ignoring Plaintiff Decedent, MCCLURE's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

    b.   Failing to deny intake to an inmate presenting with signs and symptoms of life-threating intoxication as required by Trumbull County Jail Policy.

    c.   Failing to immediately transport to a local hospital, an inmate presenting with life threatening intoxication, as required by Trumbull County Jail Policy.

    d.   Failing to provide or obtain appropriate medical care to MCCLURE, who was experiencing a medical emergency as defined by Trumbull County Jail Policy.

    e.   Failing to implement appropriate clinical protocols for the assessment, observation and treatment of MCCLURE who explained during intake that he used Heroin on that same day and that he was prescribed *Sublocade* 45 day injections, as required by Trumbull County Jail Policy.

    f.   Failing to follow appropriate opioid withdrawal protocols for MCCLURE who explained during intake that that he used Heroin on that same day and that he was prescribed *Sublocade* 45 day injections (a similar substance to methadone), as required by Trumbull County Jail Policy.

    g.   Failing to notify the jail physician regarding MCCLURE's life-threatening intoxication status, as required by Trumbull County Jail Policy.

    h.   Failing to perform observation checks at varied intervals not to exceed 10 minutes, for an inmate who was classified for suicide precautions, as required by Trumbull County Jail Policy.

    i.   Failing to refer MCCLURE, an inmate on suicide precaution status, to a mental health provider, as required by Trumbull County Jail Policy.

    j.   Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent cognitive impairment;

    k.   Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent emotional symptoms;

l.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent psychological symptoms;

m.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent behavioral symptoms;

n.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent gastrointestinal symptoms;

o.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent mood symptoms;

p.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, recent heroin use and/or withdrawal;

q.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent inability to consume food;

r.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, readily apparent inability to consume liquids;

s.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious weakness;

t.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious fatigue;

u.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious unusual/suspicious behavior;

v.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious lifeless reactions;

w.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious staggered gait;

x.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious slurred speech;

y.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE, who explained he was under the influence of heroin and Sublocade injection;

z.  Failure to obtain medical attention for Plaintiff Decedent, MCCLURE, who was obviously in the throes of life-threatening intoxication;

aa.  Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's obvious confusion and diminished mental capacity;

bb. Failure to obtain medical attention for Plaintiff Decedent, MCCLURE's, obvious dehydration;

cc. Failure to obtain treatment for Plaintiff Decedent, MCCLURE, by emergently transferring him to a hospital for medical treatment;

dd. Failure to obtain treatment for Plaintiff Decedent, MCCLURE, by administering the appropriate medical attention as required by jail policy for life-threatening intoxication;

ee. Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, MCCLURE;

ff. Failure to provide close monitoring and supervision for Plaintiff Decedent, MCCLURE;

gg. Failure to obtain electrolyte replacement for Plaintiff Decedent, MCCLURE;

hh. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, MCCLURE;

ii. Any and all other breaches as they become known throughout the course of this litigation.

191.    As a direct and proximate result of Defendant, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON's, custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff Decedent, MCCLURE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent hypoxic/ischemic encephalopathy with multisystem organ failure due to cardiorespiratory arrest with post resuscitative anoxic syndrome due to acute mixed fentanyl, acetal fentanyl and methamphetamine toxicity.

192.    As a direct and proximate result of Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff has sustained and is entitled to compensation

for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

193.　　The conduct of TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON was and remains extreme and outrageous subjecting Defendants to punitive damages.

194.　　Additionally, all of TRUMBULL COUNTY, SHERIFF MONROE and MAJOR DANIEL MASON's failures described herein were the driving force resulting in Constitutional violations.

**WHEREFORE**, Plaintiff requests the following relief:

a.　Reasonable medical, hospital, funeral and burial expenses;

b.　Conscious pain and suffering;

c.　Loss of financial support;

d.　Loss of service;

e.　Loss of gifts or other valuable gratuities;

f.　Loss of comfort, society and companionship;

g.　Compensatory and punitive damages;

h.　Reasonable attorney fees, costs and interest; and

i.　Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

## COUNT III
## 42 U.S.C. § 1983 - INADEQUATE POLICIES, PRACTICES, CUSTOMS, TRAINING AND SUPERVISION AS TO TRUMBULL COUNTY, SHERIFF MONROE & MAJOR MASON

195.　　Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

196. At all times relevant to this case, MALVASI, LLC, and/or DR. MALVASI, and TRUMBULL COUNTY were parties to an agreement under which MALVASI, LLC, and/or DR. MALVASI agreed to deliver medical services to people in custody at the Trumbull County Jail.

197. MCCLURE was never seen or treated by a medical doctor during his entire time in custody at the Trumbull County Jail which began on August 6, 2022.

198. The DEFENDANT MEDICAL STAFF in this case performed duties beyond those for which they were licensed, certified and/or registered and acted without appropriate supervision and guidance from higher-level practitioners and physicians while evaluating and treating MCCLURE at the jail.

199. Defendants, MALVASI, LLC, and/or DR. MALVASI, failed to provide adequate supervision to medical staff at the Trumbull County Jail and in that manner was deliberately indifferent to the serious medical needs of people in custody in the jail, specifically, MCCLURE.

200. The DEFENDANT MEDICAL STAFF improperly acted as gatekeepers preventing MCCLURE from receiving adequate health care from medical doctors or other appropriate higher-level practitioners.

201. Likewise, DEFENDANT CORRECTIONS OFFICERS acted as gatekeepers preventing MCCLURE from accessing adequate health care from medical doctors or other appropriate higher-level practitioners and failed to take steps to ensure his access to constitutionally adequate medical care by failing to summon or send him for emergency medical treatment.

202. Policymakers, Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON were also deliberately indifferent to the serious medical needs of MCCLURE by failing to train and supervise the corrections officers and medical staff and implement policies,

practices, customs and usages that adequately addressed the obvious and known health and safety risks to people in custody in the Jail who have and demonstrate serious medical needs, including the symptoms demonstrated by MCCLURE.

203. Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, had the responsibility and duty to monitor MALVASI, LLC, and/or DR. MALVASI'S performance as contractor and ensure that the people in custody in the Trumbull County Jail were receiving adequate medical care. Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, failed to do so.

204. On information and belief, patient medical files and complaints at the Jail were not regularly reviewed by a physician or qualified care practitioner and therefore patients were not properly referred for physician consultations, evaluations and treatment.

205. Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, were deliberately indifferent to the serious medical needs of people in custody in the Jail with life threatening symptoms including MCCLURE in part by requiring and permitting the DEFENDANT MEDICAL STAFF to inappropriately assess the health status of patients and otherwise perform services beyond what they were legally authorized to perform pursuant to their licensing, certification, and/or registration.

206. Defendants TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of MCCLURE.

207. Defendants TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, had policies, practices, customs, and usages that caused people in custody at Trumble County Jail to needlessly suffer and receive inappropriate and delayed treatment. Such policies were the

moving force behind the injuries suffered by Plaintiff Decedent, MCCLURE. By ratifying such policies, Defendants were deliberately indifferent to the serious medical needs of MCCLURE.

208.    MCCLURE's course of treatment was consistent with the treatment provided to people in custody in the Trumbull County Jail by TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, which displayed deliberate indifference to people like MCCLURE who suffered from serious medical needs.

209.    Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, knew that people in custody in Trumbull County Jail with serious medical needs were experiencing unnecessary suffering and these defendants were deliberately indifferent to their suffering.

210.    As a direct and proximate result of Defendants, TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON'S failures described herein, Plaintiff Decedent, MCCLURE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent hypoxic/ischemic encephalopathy with multisystem organ failure due to cardiorespiratory arrest with post resuscitative anoxic syndrome due to acute mixed fentanyl, acetal fentanyl and methamphetamine toxicity.

211.    As a further consequence of Defendants' actions and/or inactions, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

212.    The conduct of TRUMBULL COUNTY, SHERIFF MONROE and MAJOR MASON, was and remains extreme and outrageous subjecting Defendants to punitive damages.

213.    Additionally, all of TRUMBULL COUNTY, SHERIFF MONROE, MAJOR MASON, MALVASI, LLC, and/or DR. MALVASI's failures described herein were the driving force resulting in Constitutional violations.

**WHEREFORE**, Plaintiff requests the following relief:

a.  Reasonable medical, hospital, funeral and burial expenses;

b.  Conscious pain and suffering;

c.  Loss of financial support;

d.  Loss of service;

e.  Loss of gifts or other valuable gratuities;

f.  Loss of comfort, society and companionship;

g.  Compensatory and punitive damages;

h.  Reasonable attorney fees, costs and interest; and

i.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

## COUNT IV
## 42 U.S.C § 1983-EXCESSIVE FORCE
## AGAINST OFFICER RYAN FIFE

214.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

215.    Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, at all times relevant, Plaintiff had the right to be free from excessive force and objectively unreasonable seizures while under the custody and control of Defendants.

216.    The acts and/or omissions of Defendant OFFICER RIFE amounted to a seizure and excessive force within the meaning of the Fourth and Fourteenth Amendments, when the

Defendant terminated Plaintiff, MCCLURE'S freedom of movement through means intentionally applied.

217.    At all times relevant hereto, Plaintiff, MCCLURE was handcuffed, unarmed, and did not pose a threat of safety to Defendant OFFICER RIFE or others.

218.    Under all the circumstances known to Defendant, the physical force used against MCCLURE, was objectively unreasonable and clearly excessive.

219.    Under the circumstances known to Defendants, there was no need to use force and certainly no need to use the force defendant did by grabbing the handcuffed and visibly incoherent MCCLURE by the back of the neck and pushing him towards the ground.

220.    There were no attempts to limit or temper the amount of force used on the non-resisting plaintiff.

221.    There was no security problem confronted by the officer that justified the use of force.  In fact, two other correction officers were present at all times relevant.

222.    There was no threat of harm that could reasonably be perceived by defendant as MCCLURE was handcuffed, had already been checked by officers for weapons and was significantly smaller in stature compared to OFFICER FIFE and the two other officers who were in the immediate vicinity to provide backup.

223.    Defendant FIFE violated MCCLURE'S clearly established right to be free from unreasonable and excessive use of force and unreasonable seizures as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

224.    The acts and/or omissions of Defendant, as outlined above, amounted to an excessive force within the meaning of the Fourth and Fourteenth Amendments.

225.     The conduct of the Defendant was, and remains extreme and outrageous, subjecting him to punitive damages.

226.     The misconduct of Defendant directly and proximately caused MCCLURE, to suffer numerous injuries and damages.

**WHEREFORE**, Plaintiff requests the following relief:

a.   Reasonable medical, hospital, funeral and burial expenses;

b.   Conscious pain and suffering;

c.   Loss of financial support;

d.   Loss of service;

e.   Loss of gifts or other valuable gratuities;

f.   Loss of comfort, society and companionship;

g.   Compensatory and punitive damages;

h.   Reasonable attorney fees, costs and interest; and

i.   Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

**COUNT V**
**STATE LAW CLAIM OF MEDICAL MALPRACTICE**
**AS TO ALL MEDICAL STAFF**

227.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

228.     At all times relevant hereto, Colton McClure was admitted to the care and custody of Trumbull County Jail.

229.     At all times relevant, Defendants, PHILLIP MALVASI, D.O., JENNIFER BACH, MA THOMAS, MA SIMMONS and CARLA AHART, LPN, were responsible for the care and treatment of inmates in the custody of the Trumbull County Jail.

230.     That PHILLIP MALVASI, D.O., JENNIFER BACH, MA THOMAS, MA SIMMONS and CARLA AHART, LPN, were required to render care to inmates in conformance with the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar location.

231.     That PHILLIP MALVASI, D.O., JENNIFER BACH, MA THOMAS, MA SIMMONS and CARLA AHART, LPN, breached their duty to provide medical care to MCCLURE, consistent with the prevailing professional standard of care, when Defendants:

    a.  Failed to follow appropriate health authority policies and protocols in accordance with local, state and federal laws for treatment and observation of inmates manifesting symptoms of intoxication as required by *Ohio Admin. Code 5120:1-8-09 (W)*.

    b.  Failed to immediately seek emergency medical care for Colton McClure who presented to jail with obvious signs of life-threatening intoxication.

    c.  Failed to timely and appropriately access and review medical records and history available.

    d.  Failed to follow protocols for the assessment and treatment of individuals with acute intoxication and serious medical emergency.

    e.  Failed to take an adequate medical history.

    f.  Failed to conduct an adequate physical examination.

    g.  Failed to act appropriately, including the failure to properly examine, perform diagnostic tests on, or treat Plaintiff's medical symptoms and/or complaints.

    h.  Failed to take appropriate action in light of the repeated complaints and known medical condition of Colton McClure.

    i.  Failed to diagnose and treat Colton McClure's medical condition by appropriate and recognized methods, tests, and procedures.

j.  Failed to consult with competent and/or knowledgeable medical personnel to determine appropriate treatment protocol for Colton McClure's symptoms of life-threatening intoxication.

k.  Failed to comply with National Correctional Health Care (NCCHC) guidelines.

l.  Any other acts of professional negligence yet to be determined.

232.    At all times relevant, Defendant DR. MALVASI failed to ensure that adequate policies, practices, and customs were in place in the jail to appropriately assess, evaluate, and treat people in custody who have serious medical needs, including MCCLURE.

233.    Defendants, PHILLIP MALVASI, D.O., JENNIFER BACH, MA THOMAS, MA SIMMONS and CARLA AHART, LPN, failed to use reasonable care in assessing, evaluating, and treating MCCLURE'S serious medical needs, and each Defendant breached the standard of care in treating MCCLURE.

234.    As a direct and proximate result of Defendants, PHILLIP MALVASI, D.O., JENNIFER BACH, MA THOMAS, MA SIMMONS and CARLA AHART, LPN'S failures described herein, Plaintiff Decedent, MCCLURE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent hypoxic/ischemic encephalopathy with multisystem organ failure due to cardiorespiratory arrest with post resuscitative anoxic syndrome due to acute mixed fentanyl, acetal fentanyl and methamphetamine toxicity.

235.    As a further consequence of Defendants' actions and/or inactions, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

236. The conduct of PHILLIP MALVASI, D.O., JENNIFER BACH, MA THOMAS, MA SIMMONS and CARLA AHART, LPN, was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff requests the following relief:

a.  Reasonable medical, hospital, funeral and burial expenses;

b.  Conscious pain and suffering;

c.  Loss of financial support;

d.  Loss of service;

e.  Loss of gifts or other valuable gratuities;

f.  Loss of comfort, society and companionship;

g.  Compensatory and punitive damages;

h.  Reasonable attorney fees, costs and interest; and

i.  Such other and further relief as appears reasonable and just under the circumstances.

### COUNT VI
### STATE LAW CLAIM OF MEDICAL MALPRACTICE NEGLIGENCE BY MALVASI, LLC & DR. MALVASI

237. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

238. Defendants DR. MALVASI and MALVASI, LLC and its/his employees and agents owed a duty of reasonable care to MCCLURE.

239. Defendants DR. MALVASI and/or MALVASI, LLC are responsible for the medical care in the Trumbull County Jail for people – like Colton McClure – in custody therein. DR. MALVASI and/or MALVASI, LLC have a duty to ensure that the policies, practices, and

customs in the Trumbull County Jail concerning medical care are not negligent.  Defendants DR. MALVASI and/or MALVASI, LLC breached this duty.

240.    Defendants DR. MALVASI and/or MALVASI, LLC had a duty to provide qualified personnel who were adequately trained and supervised pursuant to appropriate policies and procedures to perform medical services at the Trumbull County Jail and a duty to use reasonable care in determining the adequacy of treatment and referral protocols, qualifications and adequate performance of its/his contractors, agents and employees who provide medical services at the Trumbull County Jail.  Defendants DR. MALVASI and/or MALVASI, LLC breached this duty.

241.    Defendants DR. MALVASI and/or MALVASI, LLC had a duty to establish appropriate policies and procedures concerning the medical treatment of people in custody at the Trumbull County Jail.  Defendants DR. MALVASI and/or MALVASI, LLC breached this duty.

242.    Defendants DR. MALVASI and MALVASI, LLC, and their contractors, employes, and agents had a duty of care to MCCLURE and breached this duty by failing to provide appropriate medical care and treatment under the circumstances.

243.    Defendants DR. MALVASI and MALVASI, LLC are liable under the doctrine of *respondeat superior/*vicarious liability for the negligent conduct of their employees and agents as alleged in this Complaint.

244.    The conduct of Defendants DR. MALVASI and/or MALVASI, LLC was a direct and proximate cause of MCCLURE'S injuries, including pain and suffering, emotional trauma, pre death agony, death, and lost chance for treatment and survival.

245.    Defendants DR. MALVASI and/or MALVASI, LLC directly and proximately caused injuries and damages to Colton McClure, his family, and his Estate.

**WHEREFORE**, Plaintiff requests the following relief:

a.  Reasonable medical, hospital, funeral and burial expenses;

b.  Conscious pain and suffering;

c.  Loss of financial support;

d.  Loss of service;

e.  Loss of gifts or other valuable gratuities;

f.  Loss of comfort, society and companionship;

g.  Compensatory and punitive damages;

h.  Reasonable attorney fees, costs and interest; and

i.  Such other and further relief as appears reasonable and just under the circumstances.

## COUNT VII
## STATE LAW CLAIM OF NEGLIGENCE: RECKLESS CONDUCT BY JAIL EMPLOYEE AS TO ALL DEFENDANT CORRECTION OFFICERS

246.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

247.    Defendants, CORRECTION OFFICERS, as correctional officers in the Trumbull County Jail, breached their duty to provide access to medical care and to protect MCCLURE from injury consistent with standard correctional practice, all in violation of Ohio Law.

248.    Defendants, CORRECTION OFFICERS, acted negligently and recklessly when they violated their duty to exercise due care for MCCLURE and committed the acts alleged in this Complaint in a reckless, willful and/or wanton manner while working as correctional officers for TRUMBULL COUNTY.

249.     Defendants, CORRECTION OFFICERS, recklessly breached their duty to care for MCCLURE and directly and proximately caused injuries and damages to Colton McClure, his family, and his Estate.

250.     The conduct of Defendants, CORRECTION OFFICERS, was a direct and proximate cause of MCCLURE'S injuries, including pain and suffering, emotional trauma, pre death agony, death, and lost chance for treatment and survival.

**WHEREFORE**, Plaintiff requests the following relief:

a.   Reasonable medical, hospital, funeral and burial expenses;

b.   Conscious pain and suffering;

c.   Loss of financial support;

d.   Loss of service;

e.   Loss of gifts or other valuable gratuities;

f.   Loss of comfort, society and companionship;

g.   Compensatory and punitive damages;

h.   Reasonable attorney fees, costs and interest; and

i.   Such other and further relief as appears reasonable and just under the circumstances.

## COUNT VIII
## STATE LAW CLAIM – WRONGFUL DEATH UNDER OHIO REV. CODE § 2125.02 AGAINST ALL DEFENDANTS

251.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

252.     Defendants' actions caused the wrongful death of Colton McClure resulting in damages recoverable under Ohio Rev. Code § 2125.02.

253.   Decedent, Colton McClure is survived by his beneficiaries, who are represented by Plaintiff in this action.

254.   Each and every Defendant, who's actions and/or inactions are described herein, directly and proximately caused Colton McClure's wrongful death and directly and proximately caused his Estate and beneficiaries to suffer, and they will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance, protection, financial and other support, as well as the grief and sorrow from the loss of the love and affection of and for their loved one, and they have otherwise suffered damages all to their detriment.

**WHEREFORE**, Plaintiff requests the following relief:

    a.   Reasonable medical, hospital, funeral and burial expenses;

    b.   Conscious pain and suffering;

    c.   Loss of financial support;

    d.   Loss of service;

    e.   Loss of gifts or other valuable gratuities;

    f.   Loss of comfort, society and companionship;

    g.   Compensatory and punitive damages;

    h.   Reasonable attorney fees, costs and interest; and

    i.   Such other and further relief as appears reasonable and just under the circumstances.

## COUNT IX
## STATE LAW CLAIM – SURVIVORSHIP CLAIM UNDER OHIO REV. CODE § 2305.21 AGAINST ALL DEFENDANTS

255.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

256.     As a direct and proximate result of the negligent, willful, wanton, reckless, and/or outrageous conduct of each and every Defendant, who's actions and/or inactions are described herein, individually and/or jointly, Colton McClure was caused to suffer severe and serious mental anguish and severe conscious physical pain and suffering prior to his death for which compensation is sought.

**WHEREFORE**, Plaintiff requests the following relief:

a.   Reasonable medical, hospital, funeral and burial expenses;

b.   Conscious pain and suffering;

c.   Loss of financial support;

d.   Loss of service;

e.   Loss of gifts or other valuable gratuities;

f.   Loss of comfort, society and companionship;

g.   Compensatory and punitive damages;

h.   Reasonable attorney fees, costs and interest; and

i.   Such other and further relief as appears reasonable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


Respectfully submitted,


*/s/ James J. Harrington, IV*
JAMES J. HARRINGTON, IV (MI Bar No.
P65351, Admitted USDC ND OH)
FIEGER, FIEGER, KENNEY &
HARRINGTON, P.C.
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555 /
fax: (248) 355-5148
j.harrington@fiegerlaw.com

Dated:  January 19, 2024